IN RE DISQUALIFICATION OF COTTRILL.

THE STATE OF OHIO *v*. WEAVER.

[Cite as *In re Disqualification of Cottrill*, ___ Ohio St.3d ___,

2022-Ohio-4800.]

*Judges—Affidavits of disqualification—R.C. 2701.03—Even in cases in which no evidence of actual bias or prejudice is apparent, a judge's disqualification may be appropriate to avoid an appearance of impropriety or when the public's confidence in the integrity of the judicial system is at issue—An appearance of bias can be just as damaging to public confidence as actual bias—Disqualification granted.*

(No. 22-AP-153—Decided December 30, 2022.)

ON AFFIDAVIT OF DISQUALIFICATION in Muskingum County Court of Common Pleas, General Division, Case No. CR2015-0216.

_____

**O'CONNOR, C.J.**

**{¶ 1}** Rachel Troutman, counsel for the defendant, Emile Weaver, has filed an affidavit pursuant to R.C. 2701.03 and Article IV, Section 5(C) of the Ohio Constitution seeking to disqualify Judge Kelly J. Cottrill from the above-referenced case.[1]

**{¶ 2}** For the reasons explained below, a new judge will be assigned to this case to avoid any appearance of bias.

_____

1. Ms. Troutman filed a prior affidavit seeking Judge Cottrill's disqualification, but it was denied because nothing was pending before Judge Cottrill at the time that affidavit was filed. *See* Supreme Court case No. 22-AP-152.

**Background**

**{¶ 3}** In 2016, after the death of her newborn, Weaver was found guilty of one count of aggravated murder, one count of gross abuse of a corpse, and two counts of tampering with evidence. Judge Mark Fleegle sentenced Weaver to life in prison without the possibility of parole. On December 8, 2022, this court remanded the case to the trial court for a new sentencing hearing before a different judge. *State v. Weaver*, ___ Ohio St.3d ___, 2022-Ohio-4371, ___ N.E.3d ___, ¶ 63. This court found that Judge Fleegle had abused his discretion in denying Weaver's petition for postconviction relief and had violated her due-process rights by acting in a biased manner. *Id.* at ¶ 30-62.

**{¶ 4}** In Ms. Troutman's affidavit of disqualification, she alleges that an appearance of bias would exist if Judge Cottrill—the only other judge of the Muskingum County Court of Common Pleas, General Division—presided over Weaver's new sentencing hearing. Ms. Troutman first argues that because Judge Cottrill and Judge Fleegle have been colleagues for approximately 17 years, Judge Cottrill "will effectively be communicating his agreement" with this court's conclusion that his long-time colleague was biased if he sentences Weaver to anything less than life without parole. Ms. Troutman also asserts that a case similar to the underlying matter "played a part" in Judge Cottrill's 2004 election to the common-pleas-court bench.

**{¶ 5}** Judge Cottrill submitted a response to the affidavit and disagrees that any appearance of bias would exist if he presided over Weaver's sentencing hearing. Regarding his relationship with Judge Fleegle, Judge Cottrill says that although he respects his judicial colleague, he is "not a Judge Fleegle clone" and accepts that this court already determined that Judge Fleegle was biased in Weaver's case. Judge Cottrill further states that it is impossible to determine what effect, if any, the prior similar case had on his 2004 election to the common-pleas-

court bench. He disclaims having any preconceived opinions about the appropriate sentence for Weaver.

## Merits of the affidavit of disqualification

{¶ 6} The allegations in Ms. Troutman's affidavit do not support a finding that Judge Cottrill has an actual bias against Weaver or that he would be unable to fairly and impartially sentence her. Further, there is no merit to Ms. Troutman's contention that Judge Cottrill's long-time professional relationship with Judge Fleegle would somehow cloud Judge Cottrill's ability to fairly weigh the appropriate sentencing factors.

{¶ 7} "Nevertheless, even in cases in which no evidence of actual bias or prejudice is apparent, a judge's disqualification may be appropriate to avoid an appearance of impropriety or when the public's confidence in the integrity of the judicial system is at issue." *In Disqualification of Crawford*, 152 Ohio St.3d 1256, 2017-Ohio-9428, 98 N.E.3d 277, ¶ 6. Indeed, "[a]n appearance of bias can be just as damaging to public confidence as actual bias." *In re Disqualification of Murphy*, 110 Ohio St.3d 1206, 2005-Ohio-7148, 850 N.E.2d 712, ¶ 6.

{¶ 8} Here, there appears to be no dispute that Weaver committed acts similar to those committed by Jennifer Bryant. In 2004, Judge Cottrill's predecessor and election opponent—former Judge Howard Zwelling—granted Bryant judicial release after she had served six months in prison. Ms. Troutman claims that Bryant's sentence influenced Judge Cottrill's election to the common-pleas-court bench in 2004. To support that claim, Ms. Troutman has submitted a newspaper article and two letters to the editor that were published in the same Zanesville newspaper.

{¶ 9} The article contrasted the qualifications of Judge Cottrill and Zwelling and directly addressed Zwelling's sentence in Bryant's case. The article noted:

Zwelling has drawn some criticism for decisions—most recently his decision to release Jennifer Bryant, the former Muskingum College student who dumped her deceased baby in a trash bin, after only six months in prison. Zwelling said knowing it was an election year he could have kept Bryant in prison, but "I may not have been able to sleep at night."

\* \* \*

Cottrill, too, speaks of his experience in legal circles. He successfully tried hundreds of cases in common pleas court as a lawyer and was a prosecutor for the city of Zanesville. But he believes he and Zwelling are polar opposites when it comes to their views of the law.

"I'm a conservative, no-nonsense, tough-on-crime judge. My opponent is not," Cottrill said.

He said Zwelling's record and reputation in the community supports why he should replace him on the bench. Although he would not speak specifically, he said there are decisions that Zwelling has made that he has not agreed with.

"I hold convicted defendants accountable and responsible for their actions. It takes work to do that," Cottrill said.

\* \* \*

[Cottrill] does not typically believe in early release from a jail sentence because he thinks there is no reason to sentence a person to two years in prison if you don't actually expect that person to serve a full sentence.

When deciding on an appropriate sentence, he said there are many factors to consider, but following the law and protecting the community are a must.

4

Although it appears that Judge Cottrill did not specifically comment on Bryant's sentence for the article, the article's reference to Bryant's case is evidence that it was a factor used to influence the judicial election—at least for the local media.

{¶ 10} As noted, Ms. Troutman also submitted two letters to the editor, one of which was written by Judge Cottrill's brother. The letter directly connected Bryant's case to Judge Cottrill's campaign and implied that Judge Cottrill would have sentenced Bryant more harshly. In his letter, the judge's brother said he was "outraged" at the sentence that Zwelling had imposed on Bryant and that a six-month punishment for Bryant's crime was demeaning to the severity of the crime. The judge's brother further wrote:

> We must protect the helpless of our society. Zwelling's message to the mothers of our community seems to be if you must kill you[r] baby I'll understand and only give you six months punishment. If the citizens of Muskingum County want to protect the helpless and deter crime, vote for my brother, Judge Kelly Cottrill. He has a much different attitude about protecting our citizens.

{¶ 11} The second letter to the editor similarly urged readers to vote for Judge Cottrill because of Bryant's sentence. The letter stated:

> I have paid close attention to each of the candidates for Common Pleas Court since Howard Zwelling let Jennifer Bryant out of prison only after six months. Remember her? She only killed her own baby and discarded the body in a Dumpster * * *.

Judge Cottrill is the obvious best choice for judge. He is tough on criminals and protects our community. He has given more than six months of incarceration to people convicted of misdemeanors, I know that a woman who killed and threw away her own baby would not be walking the streets in six months if it were up to him.

\* \* \*

I saw the Times Recorder endorsed Zwelling (Oct. 21 edition). This in spite of praising Judge Cottrill's record and work ethic. The paper cited only Zwelling's experience in support of its decision. Don't these same editors live in our same community and don't they recognize that six more years of the "Zwelling experience" will put more killers in the neighborhood?

I think it's time for some old-fashioned, no-nonsense justice in our Common Pleas Court. Protect our children and protect our community. Please vote for Judge Cottrill.

{¶ 12} These documents—especially the letters to the editor—suggest that Bryant's sentence was made an issue in Judge Cottrill's 2004 election to judicial office. The letters to the editor specifically criticize the sentence that Zwelling imposed in Bryant's case and essentially vouch for Judge Cottrill to be a judge who will mete out harsher sentences, *especially* on a defendant like Bryant. There is no evidence that Judge Cottrill repudiated the letters to the editor at the time they were published. In his response to Ms. Troutman's affidavit of disqualification, Judge Cottrill notes that it is "unfounded and false" to assume that letters published 18 years ago would have any impact on his judicial functioning. But Judge Cottrill did not necessarily denounce the substance of those letters or distance himself from the inferences made by the letter writers.

**{¶ 13}** The Code of Judicial Conduct prohibits judges and judicial candidates from making public comments on pending and impending cases. *See* Jud.Cond.R. 2.10 and 4.1. Those rules are intended to protect the public's confidence in the independence, integrity, and impartiality of the judiciary. *See* Jud.Cond.R. 2.10, Comment 1. That is, judges decide cases based on the law and the individual facts before them. Pledges or promises about how a judge will sentence a particular defendant may convey that the judge will not consider each case on the merits.

**{¶ 14}** There is no evidence that Judge Cottrill himself violated any of those ethical rules. But the lingering impression created by the article and letters is that Judge Cottrill disagreed with the sentence that Zwelling imposed in Bryant's case and that his disagreement was used to influence the judicial election. Given the similarities with the facts in Bryant's and Weaver's cases, an objective observer might reasonably question whether Judge Cottrill is open to the full range of permissible sentences that are available for Weaver. *See In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8 (explaining that an appearance of impropriety exists "if a reasonable and objective observer would harbor serious doubts about the judge's impartiality").

**{¶ 15}** Weaver has already been subjected to a biased judge—which itself is an affront to the essential notion of justice. Indeed, this court found that Judge Fleegle had "willfully refused to consider the evidence of neonaticide" that Weaver offered to show that her trial counsel was ineffective. *Weaver*, ___ Ohio St.3d ___, 2022-Ohio-4371, ___ N.E.3d ___, at ¶ 60. And this court noted that Judge Fleegle had mentioned a previous case with similar facts that resulted in a much lighter sentence and that his comments about the prior case suggested he found it "personally distasteful." *Id.* Ms. Troutman claims that the case referenced by Judge Fleegle was Bryant's.

**{¶ 16}** Considering the detailed findings of judicial bias in *Weaver*, it is imperative to remove any hint or question of an appearance of bias and to ensure to the parties and the public the *unquestioned* neutrality of an impartial judge. This court long ago noted that " '[n]ext in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge.' " *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 471, 132 N.E.2d 191 (1956), quoting *Haslam v. Morrison*, 113 Utah 14, 20, 190 P.2d 520 (1948). Consistent with that principle, Ms. Troutman's affidavit of disqualification is granted to avoid any appearance of bias. The assignment of a visiting judge to preside over Weaver's new sentencing hearing will be addressed in a separate entry.

_____