[Cite as *State v. Kennedy*, 2024-Ohio-66.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                                No. 112563

    v.                           :

HAROLD KENNEDY,                         :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 11, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-03-437427-ZA

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah E. Hutnik, Assistant Prosecuting Attorney, *for appellee.*

Kimberly Kendall Corral and Gabrielle M. Ploplis, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Harold Kennedy ("Kennedy"), appeals from the trial court's denial of his petition for postconviction relief. He raises the following assignments of error for review:

1. The trial court abused its discretion in denying Mr. Kennedy's postconviction petition as the evidence presented meets the requisite standard required under R.C. 2953.23.

2. The trial court abused its discretion in applying the wrong standard in assessing Mr. Kennedy's postconviction petition.

3. The record demonstrates per se that Mr. Kennedy's right to due process and a fair and impartial judge and jury was violated.

4. The trial court erred in ruling that Kennedy's claim of ineffective assistance of counsel was barred by res judicata.

5. The trial court abused its discretion when it failed to hold an evidentiary hearing where the state's opposition shows why neutral court intervention is imperative.

6. The trial court erred in ruling that issues regarding trial testimony are barred by res judicata.

7. Res judicata does not apply where prior rulings were made by a biased, non-neutral trial court.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} On May 15, 2003, Kennedy was named in a three-count indictment, charging him with aggravated murder in violation of R.C. 2923.01(A)(1) (Count 1); attempted aggravated murder in violation of R.C. 2923.01(A)(1) and 2923.02 (Count 2); and having weapons while under disability in violation of R.C. 2923.13 (Count 3). Counts 1 and 2 contained three- and five-year firearm specifications pursuant to R.C. 2941.145 and 2941.146.

{¶ 4} The matter proceeded to trial on July 29, 2003, where the following facts were adduced:

According to the facts, one of the victims, Raiketta Finnie, graduated from Collinwood High School in June 2002 and began dating Kennedy the same month. Raiketta has known Kennedy, also known to her as "Dude," since the ninth grade. Soon after the two of them began dating, Raiketta took out a car loan to purchase a 1998 Chevy Tahoe for Kennedy. Raiketta purchased the truck in her name because Kennedy did not have sufficient credit to purchase it himself. They agreed that once Raiketta purchased the truck, Kennedy would make the payments; however, Kennedy only made a few payments on the truck. His last payment was in November 2002. Kennedy and Raiketta ended their relationship in February 2003.

Kennedy eventually stopped making payments on the truck; however, he still had possession of it.

In April 2003, Raiketta and her best friend, Ebony Strickland, went to the Cleveland Police Department to file a report because Kennedy still had possession of the truck and was not making payments of any kind. After Raiketta and Ebony went to the police department, they noticed that they were being followed by [Kennedy]. Raiketta pulled her car into the parking lot at Ebony's apartment and [Raiketta and Ebony] got out of the car. [Kennedy] exited his vehicle and approached [Raiketta and Ebony] as they were walking up to the apartment building.

[Kennedy] began screaming at Raiketta and they started physically fighting. [Kennedy] was trying to hold Raiketta down on the ground, but she escaped his hold and got to her feet. During the struggle, Raiketta dropped her purse, which contained the title to the truck, on the ground. [Kennedy] then took Raiketta's purse and left the area. [Raiketta and Ebony] went up to Ebony's apartment. [Kennedy] called Ebony's cell phone and threatened to kill Raiketta if she did not leave him alone. [Kennedy] also told Raiketta that he had a gun in his truck. When Raiketta's purse was later returned to her, the truck title was missing from her purse and [Kennedy] still had possession of the truck. Later, toward the end of April, Raiketta learned that the truck was in the police impound lot, and she finally got the truck back in her possession.

On May 2, 2003, Raiketta drove her truck to the hair salon. She was getting her hair done with Ebony and three of her other friends. While they were inside the salon, [Kennedy's] cousin, Cynthia Pitts, and other individuals entered the salon and told Raiketta to return [Kennedy's] belongings that were still inside of the truck. Raiketta opened the door to the truck for them. While speaking on a cell phone, [Kennedy's]

relatives removed various objects, and [Kennedy's] aunt reached underneath the driver's seat, lifted up the carpet, and removed a gun.

The next evening, on May 3, 2003, Raiketta drove her truck to a basketball game at Kennedy High School with her friends. During the game, Desarae Green, the mother of [Kennedy's] child, who was also at the game, made menacing gestures toward Raiketta. After leaving the game, Raiketta stopped at a traffic light. Desarae and her friends, who were also at the stoplight, threw a bottle, some sticks, and another object at Raiketta's truck. Desarae also rear-ended Raiketta's truck, causing Raiketta to hit the car in front of her. Shortly thereafter, Raiketta exchanged phone numbers and insurance information with the pregnant woman she hit. [Raiketta] left and drove to Romanica Gilham's [home]. Romanica is Ebony's sixteen-year-old cousin.

While [Raiketta was] on [her] way to Romanica's house, [she] called Cynthia Pitt's cell phone trying to reach Desarae. Raiketta and Desarae were going to fight later that night at Euclid Creek. Later that evening, Desarae arrived at Romanica's house with about six other girls. The seven girls exited the car and another car pulled up behind Desarae, but no one exited that car. At that point, Raiketta and Desarae started physically fighting on the street near Romanica's house. Several other people became involved in the fight. [Kennedy] walked up to the area where the girls were fighting with a gun in his pocket. Kennedy began firing his gun toward the porch where others were standing.

Raiketta and Romanica heard several gunshots. The next thing she knew, Raiketta had been shot in the pelvis. Raiketta fell to the ground and rolled over. As she rolled over, she saw Ebony lying on the ground, bleeding and coughing up blood. Ebony was pronounced dead upon arrival at the hospital. The doctor was unable to remove the bullet from Raiketta's pelvic area because it was too close to her vital areas. The day after the shooting, the police interviewed Desarae and Cynthia Pitts.

(Footnotes omitted.) *State v. Kennedy*, 8th Dist. Cuyahoga No. 83445, 2004-Ohio-6414, ¶ 5-12.

{¶ 5} At the conclusion of the trial, Kennedy was found not guilty of aggravated murder as charged in Count 1, but guilty of the lesser included offense of murder in violation of R.C. 2903.02, with firearm specifications. Similarly, Kennedy

was found not guilty of attempted aggravated murder as charged in Count 2, but guilty of the lesser included offense of attempted murder in violation of R.C. 2903.02 and 2923.02, with firearm specifications. Finally, the trial court found Kennedy guilty of having a weapon while under disability as charged.

{¶ 6} On August 6, 2003, Kennedy was sentenced to an aggregate prison term of 31 years to life.

### Postconviction Proceedings

{¶ 7} On December 4, 2004, this court affirmed Kennedy's convictions and sentence on the lesser included offenses corresponding to Counts 1 and 2 of the indictment. *Kennedy*, 8th Dist. Cuyahoga No. 83445, 2004-Ohio-6414. We found, however, that the trial court failed to strictly follow the provisions of R.C. 2945.05 for the waiver of a jury trial on the having weapons while under disability offense charged in Count 3 of the indictment. Count 3 was later nolled, and Kennedy was resentenced to an aggregate prison term of 30 years to life on Counts 1 and 2.

{¶ 8} While Kennedy's direct appeal was pending, he filed a petition for postconviction relief pursuant to R.C. 2953.21. *See* R.C. 2953.21(D). The petition set forth claims for ineffective assistance of counsel, arguing that defense counsel rendered deficient and prejudicial performance at trial by (1) failing to secure the presence of an exculpatory witness, Lashawn Thomas ("Thomas"), at trial, (2) requesting a defense witness, Cynthia Pitts ("Pitts"), to change her testimony to fit the theory of the case, and (3) failing to contact a witness, Michael Scott ("Scott"), who would have rebutted key testimony from the state's witness, Officer Thomas

Bordonaro. Kennedy asserted that had he received competent representation, the outcome of his trial would have been different.

{¶ 9} In the petition, counsel for Kennedy expressed that the evidence supporting the claims of ineffective assistance of counsel relied on "affidavits from two individuals, and a letter from a third." Counsel indicated that his office had not received the documents from Kennedy as of the filing of the petition, but that the petition would be amended to include the affidavits and the letter once they were received. However, there is no indication in the record to suggest that the petition was amended to include the purported evidence.

{¶ 10} On August 25, 2004, the trial court summarily denied Kennedy's petition for postconviction relief. Kennedy did not appeal the trial court's judgment.

{¶ 11} On November 12, 2008, Kennedy filed a pro se motion for leave to file a delayed motion for new trial pursuant to Crim.R. 33, based on the discovery of new evidence. In the motion, Kennedy argued that his convictions and sentence were the product of (1) perjured and coached prosecution witnesses, (2) prosecutorial misconduct, (3) witness misconduct, and (4) ineffective assistance of counsel. In relevant part, Kennedy alleged that the state knowingly relied on perjured testimony and withheld exculpatory evidence from the defense, including a police report that provided a description of the shooter that was not consistent with Kennedy's size or weight.

{¶ 12} On the same day, Kennedy filed a pro se petition to vacate or set aside the sentence, setting forth analogous claims to those raised in the motion for leave

to file a delayed motion for new trial pursuant to Crim.R. 33. Kennedy also filed a pro se motion for recusal, requesting the trial judge to recuse herself from his case because she presided over the criminal trial that resulted in Kennedy's allegedly "wrongful imprisonment."

{¶ 13} On January 22, 2009, the trial court summarily denied each of Kennedy's pro se motions. The trial court subsequently issued findings of fact and conclusions of law, stating, in relevant part:

> After reviewing all the documents connected with Case No. 437427, petition to vacate or set aside judgment of conviction or sentence * * * and all files and records pertaining to the proceedings against Petitioner, the trial court finds no substantial grounds for postconviction relief exist.

{¶ 14} Kennedy appealed from the trial court's judgment. On December 29, 2009, however, this court dismissed the appeal due to Kennedy's failure to file an appellate brief.

{¶ 15} On March 10, 2022, Kennedy filed a successive petition for postconviction relief pursuant to R.C. 2953.21 and 2953.23, arguing that his convictions "lack reliability and credibility" due to ineffective assistance of defense counsel, judicial bias, and the state's failure to disclose material exculpatory evidence. With respect to the alleged prosecutorial misconduct, Kennedy argued that the state prejudicially withheld exculpatory evidence during the discovery process, including various investigation reports that contained statements from state witnesses that were inconsistent with their testimony at trial. Kennedy also reiterated his claims that trial counsel rendered ineffective assistance of counsel by

(1) failing to adequately impeach the identification testimony of state witnesses, (2) failing to secure the presence of Thomas at trial, and (3) engaging in unlawful and unethical conduct by compelling Pitts to "lie on the stand." Finally, Kennedy presented a claim of judicial bias, arguing that he was materially prejudiced by the trial court's failure to disclose a personal relationship with a state witness, Rosalyn Wynn ("Rosalyn"). Kennedy further suggested that the trial court failed to disclose a personal relationship with a nonwitness who was reportedly dating "another suspect in this case."

{¶ 16} In support of his constitutional claims, Kennedy attached the following materials to his petition: (1) the affidavit of Pitts (Exhibit A); (2) the affidavit of trial counsel, G. Michael Goins, Esq. ("Attorney Goins") (Exhibit B); (3) an excerpt from the trial court's statement in an unrelated judicial proceeding (Exhibit C); (4) investigatory reports produced by the Cleveland Division of Police, dated May 4, 2003, May 5, 2003, May 6, 2003, May 18, 2003, May 29, 2003, and June 15, 2003 (Exhibits D, E, F, G, H, I, and J); (5) the affidavit of Kennedy (Exhibit K); and (6) the affidavit of postconviction counsel, Kimberly Kendall Corral, Esq. ("Attorney Kendall Corral") (Exhibit L).

{¶ 17} The state opposed the successive petition, arguing that Kennedy's claims were barred by res judicata or otherwise failed to satisfy the jurisdictional requirements of R.C. 2953.23(A). The state summarized its position as follows:

> Many of [Kennedy's] claims are barred by res judicata because he could have raised them on direct appeal of his convictions but failed to do so. Kennedy's claims of ineffective assistance of counsel are not supported

by credible affidavits and are contradicted by the record. Kennedy's claims of judicial bias are not supported by credible evidence. And Kennedy's claim of *Brady* violations are belied by the record and his own exhibits. Thus, Kennedy has not shown he is entitled to relief. His petition should be denied without a hearing.

{¶ 18} The state supported its brief in opposition with (1) the trial judge's written response to Kennedy's filing of an affidavit of disqualification with the Ohio Supreme Court, (2) a copy of Kennedy's original petition for postconviction relief filed in August 2004, and (3) the affidavit of trial counsel, Attorney Goins.

{¶ 19} On May 2, 2022, the trial court issued an order recusing itself from Kennedy's case, and the matter was transferred to the docket of a newly assigned trial judge.

{¶ 20} On March 8, 2023, the trial court denied Kennedy's petition for postconviction relief without a hearing. The judgment states, in relevant part:

> The court notes that petitioner has filed previous petitions, and in this case failed to file a motion for leave to file his petition. The case has been transferred to this court for review based upon recusal by the original trial court. This court, having reviewed the entire record and proceedings, dismisses the petition for the following reasons: The successive petition is untimely R.C. 2953.21(A)(2), and, issues raised regarding ineffective assistance of counsel and trial testimony are barred under res judicata.

{¶ 21} Kennedy now appeals from the trial court's judgment.

## II. Law and Analysis

### A. Successive Petition for Postconviction Relief

{¶ 22} In the first and fifth assignments of error, Kennedy argues the trial court abused its discretion in denying his petition for postconviction relief pursuant to R.C. 2953.21 and 2953.23 without a hearing. In the fourth and sixth assignments

of error, Kennedy argues the trial court erred in ruling that his claim of ineffective assistance of counsel and issues relating to trial testimony are barred by the doctrine of res judicata.  We address these assignments of error together because they are related.

**Standard of Review**

{¶ 23} R.C. 2953.21 through 2953.23 set forth how a convicted defendant may seek to have the trial court's judgment or sentence vacated or set aside pursuant to a petition for postconviction relief.  A defendant's petition for postconviction relief is a collateral civil attack on his or her criminal conviction.  *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 48.  The statute affords relief from judgment where the petitioner's rights in the proceedings that resulted in his conviction were denied to such an extent the conviction is rendered void or voidable under the Ohio or United States Constitutions.  R.C. 2953.21(A); *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph four of the syllabus.  A postconviction petition, however, does not provide a petitioner a second opportunity to litigate the conviction.  *State v. Hessler*, 10th Dist. Franklin No. 01AP-1011, 2002-Ohio-3321, ¶ 32.

{¶ 24} Pursuant to R.C. 2953.21(A)(1)(a)(i), any person who has been convicted of a criminal offense and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and

asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claims for relief. R.C. 2953.21(A)(1)(b).

{¶ 25} R.C. 2953.21(A)(2) provides that a petition for postconviction relief shall be filed within 365 days from the filing of the trial transcripts in the petitioner's direct appeal or, if a direct appeal was not pursued, 365 days after the expiration of the time in which a direct appeal could have been filed. Because more than 19 years have passed since the date of Kennedy's direct appeal, there is no dispute that his successive petition for postconviction relief was filed well beyond the timeframe set forth under R.C. 2953.21. Thus, the successive petition is untimely.

{¶ 26} R.C. 2953.21(A) precludes the trial court from entertaining an untimely petition for postconviction relief unless the petition meets two conditions. First, the petitioner must show either that he or she was unavoidably prevented from discovering the facts upon which the petition relies, or that the United States Supreme Court has recognized a new federal or state right that applies retroactively to the petitioner. R.C. 2953.23(A)(1)(a). Second, the petitioner must show by clear and convincing evidence that a reasonable factfinder would not have found him or her guilty but for the constitutional error at trial. R.C. 2953.23(A)(1)(b).

{¶ 27} Because the timeliness requirement of R.C. 2953.23 is jurisdictional, a trial court does not have jurisdiction to entertain an untimely filed petition for postconviction relief that does not meet the exceptions set forth in R.C.

2953.23(A)(1). *State v. Barrow*, 8th Dist. Cuyahoga No. 108832, 2020-Ohio-3719, ¶ 7, citing *State v. Kleyman*, 8th Dist. Cuyahoga No. 93896, 2010-Ohio-3612, ¶ 35.

{¶ 28} Relevant to this appeal, it is well-settled that the doctrine of res judicata applies to proceedings involving postconviction relief. *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 671 N.E.2d 233 (1996).

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. "Therefore, 'any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings.'" *State v. Segines*, 8th Dist. Cuyahoga No. 99789, 2013-Ohio-5259, ¶ 8, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 16.

{¶ 29} Similarly, "res judicata operates to bar successive petitions for postconviction relief that raise claims that were or could have been raised * * * in a prior petition." *State v. Castellon*, 8th Dist. Cuyahoga No. 112522, 2023-Ohio-4215, ¶ 21, citing *State v. Waver*, 8th Dist. Cuyahoga No. 108820, 2020-Ohio-2724, ¶ 32, and *State v. Mack*, 8th Dist. Cuyahoga No. 101261, 2018-Ohio-301, ¶ 15 ("The doctrine of res judicata prevents repeated attacks on a final judgment for issues that were or could have been previously litigated."). *See also State v. Levy*, 8th Dist.

Cuyahoga No. 111779, 2023-Ohio-818, ¶ 12 ("[A] successive petition for postconviction relief is typically subject to the doctrine of res judicata.").

{¶ 30} Ordinarily, an appellate court reviews a trial court's decision granting or denying a petition for postconviction relief for an abuse of discretion. *Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶ 58. However, whether the trial court possessed subject-matter jurisdiction to entertain a petition for postconviction relief is a question of law subject to de novo review. *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 24. In a de novo review, we review the merits of the case independently, without any deference to the trial court. *Sosic v. Stephen Hovancsek & Assocs., Inc.*, 8th Dist. Cuyahoga No. 109993, 2021-Ohio-2592, ¶ 21.

{¶ 31} With these standards in mind, we address the constitutional claims set forth in Kennedy's untimely and successive petition.

### 1. *Brady* Violation

{¶ 32} In this case, Kennedy alleged in his successive petition for postconviction relief that the state violated his constitutional right to due process by withholding exculpatory police reports that were favorable to the defense and could have been used to impeach the identification testimony of several key state witnesses. The police reports, marked Defense Exhibits D-J, contain statements from several witnesses in the days and weeks following the shooting. Kennedy asserted that these reports were not provided to defense counsel during the

discovery process and were only obtained in 2021 following a public-records request.

{¶ 33} In relevant part, the police reports contain (1) Raiketta's May 4, 2003 statement that "she saw a male who might have been her ex-boyfriend Harold Kennedy but she could not be sure if it was him" (Exhibit D); (2) Raiketta's May 5, 2003 statement that "she observed [Kennedy] point a handgun in the air and fire the weapon, the weapon was then pointed in her direction" (Exhibit E); (3) Finnie's May 18, 2003 statement that she observed Kennedy standing at the rear of a white or silver vehicle (Exhibit F); (4) Romanica Gilham's ("Gilham") May 29, 2003 statement that she observed a yellow Monte Carlo parked in the field next to her home (Exhibit G); (5) Kelynn Hardnick's ("Hardnick") May 4, 2003 statement that she observed a male standing next to a yellow vehicle wearing a blue hat fire a gun (Exhibit H); (6) Hardnick's May 5, 2003 statement identifying Kennedy as the shooter (Exhibit I); and (7) Karmesha Wilson's ("Wilson") June 15, 2003 statement that although the yellow car seen at the scene did not have anything to do with the shooting, she was familiar with the male in the yellow vehicle and identified him as "Jermaine." (Exhibit J).

{¶ 34} In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court of the United States recognized that the prosecution has an affirmative duty to disclose evidence that is favorable to the accused and material to the accused's guilt or punishment. *See also Kyles v. Whitley*, 514 U.S. 419, 432, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). That "duty encompasses impeachment

evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). The *Brady* rule applies regardless of whether evidence is suppressed by the state willfully or inadvertently. *Id.* at 282.

{¶ 35} The Supreme Court has explained that evidence is favorable to the accused when it is exculpatory or impeaching. *Id.* at 281-282. And "favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles* at 433, quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A different result is reasonably probable "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* at 434, quoting *Bagley* at 678.

{¶ 36} For the trial court to have jurisdiction to entertain the *Brady* claim alleged in the successive postconviction petition, Kennedy first had to establish that he was "unavoidably prevented from discovery of the facts" on which he relies. R.C. 2953.23(A)(1)(a). To meet this standard, courts in Ohio have held that a defendant ordinarily must show that he was unaware of the evidence he is relying on and that he could not have discovered the evidence by exercising reasonable diligence. *See State v. Harrison*, 8th Dist. Cuyahoga No. 105909, 2018-Ohio-1396, ¶ 6.

{¶ 37} In *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, however, the Ohio Supreme Court recognized that unlike other evidence supporting a petition for postconviction relief, "criminal defendants have no duty to

'scavenge for hints of undisclosed *Brady* material.'" *Id*. at ¶ 24. Accordingly, the Ohio Supreme Court explained that in the context of an alleged *Brady* violation, the defendant "is not required to show that he could not have discovered suppressed evidence by exercising reasonable diligence." *Id*. at ¶ 25, citing *Strickler*, 527 U.S. at 282-285, 119 S.Ct. 1936, 144 L.Ed.2d 286. Rather, a defendant satisfies the "unavoidably prevented" requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies. *Id*.

{¶ 38} Within his petition for postconviction relief, Kennedy broadly asserted that he was unavoidably prevented from discovering the evidence supporting his *Brady* claim, "as none of the evidence was available to him during the prescribed time limitation." Kennedy maintained that the newly discovered police reports only became available to him following a public-records request made by his postconviction attorney in 2021.

{¶ 39} After careful consideration of the record and materials attached to Kennedy's successive petition for postconviction relief, we find no evidentiary basis to conclude that the police reports underlying the *Brady* claim were willfully or inadvertently suppressed by the prosecution in this case. Although the evidence attached to the petition establishes that the police reports were acquired by Attorney Kendall Corral following a public-records request in 2021, there is no evidence to suggest that the police reports were not disclosed by the state during the discovery

process utilized in 2003.[1] Attorney Goins did not aver, for example, that the defense did not know about the police reports before Kennedy's trial in 2003 or that, if disclosed, the reports would have been incorporated into his defense at trial. *See Bethel* at ¶ 27; *State v. Hale*, 8th Dist. Cuyahoga No. 112163, 2023-Ohio-3894, ¶ 38-39; *State v. Larkins*, 8th Dist. Cuyahoga No. 82325, 2003-Ohio-5928. In fact, the record reflects that defense counsel raised an objection at trial regarding his perception of inconsistencies between Raiketta's trial testimony and his pretrial notes that reflected the statements "read to [him] by the prosecutor." (Tr. 456-457.) Although trial counsel's notes are not part of the record, his objection only serves to demonstrate that he was, in fact, notified during the discovery process used in 2003 that Raiketta may have provided inconsistent statements to the police during the initial investigation

{¶ 40} Based on the foregoing, we find the documentary and inferential evidence incorporated into Kennedy's successive petition for postconviction relief does not establish that the disputed evidence was suppressed. Thus, pursuant to the directives set forth by the Ohio Supreme Court in *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, Kennedy failed to demonstrate that he was unavoidably prevented from discovering the facts upon which his *Brady* claim relies.

---

[1] In 2010, Ohio instituted a system of open discovery in criminal cases. *See* Staff Notes to Crim.R. 16. Crim.R. 16(A) states the purpose for the adoption of this system: "This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large."

{¶ 41} Notwithstanding our conclusions under R.C. 2953.23(A)(1)(a), we note that Kennedy's postconviction petition faces an additional jurisdictional hurdle: under R.C. 2953.23(A)(1)(b), he must show by clear and convincing evidence that no reasonable factfinder would have found him guilty but for constitutional error at trial. This question goes to the heart of *Brady*'s third prong, which requires Kennedy to show that "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles*, 514 U.S. at 433, 115 S.Ct. 1555, 131 L.Ed.2d 490, quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375, 87 L.Ed.2d 481.

{¶ 42} The *Brady* standard does not require Kennedy to show that disclosure of the police reports would have resulted in his acquittal. *See Kyles* at 434. Nor does it require him to show that "after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been [sufficient evidence] left to convict." *Id*. at 434-435. Rather, Kennedy was required to demonstrate that "in the context of the entire record," *United States v. Agurs*, 427 U.S. 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), suppression of the police reports "'undermines confidence in the outcome of the trial.'" *Kyles* at 434, quoting *Bagley* at 678. Thus, the question is whether we can have confidence in the jury's verdict even assuming that the prosecution suppressed the police reports cited in Kennedy's successive petition. *See Bethel* at ¶ 34, citing *Kyles* at 434.

{¶ 43} Viewing the record and the evidence supporting the convictions, Kennedy has failed to establish by clear and convincing evidence that disclosure of

the allegedly suppressed evidence would have undermined our confidence in the jury's verdict. Contrary to Kennedy's position on appeal, the police reports were not exculpatory. Rather, they were corroborative of the state's theory of the case. While the police reports reflect minor inconsistencies between Raiketta, Gilham, Hardnick, and Wilson's recollection of the incident, the witnesses each conclusively stated that they observed Kennedy fire a handgun in the direction of Raiketta and Ebony in the midst of the altercation. The police reports further indicate that the individual believed to be inside the yellow vehicle present at the scene was not involved in the shooting. To the extent Hardnick's first statement implicated the yellow vehicle, her second statement demonstrates that her initial statement was motivated by fear "of what might happen if she was to tell on somebody." Under these circumstances, we find the trial court lacked jurisdiction to entertain the Brady claim raised in Kennedy's successive postconviction petition.

## 2. Ineffective Assistance of Counsel

{¶ 44} Kennedy's successive petition for postconviction relief further alleged that trial counsel's deficient performance throughout the trial rendered his judgment of conviction void or voidable under R.C. 2953.21. As previously mentioned, Kennedy claimed that counsel prejudicially (1) failed to impeach the identification testimony of state witnesses, (2) failed to secure the presence of Thomas at trial, and (3) engaged in unlawful and unethical conduct by compelling Pitts to "lie on the stand."

{¶ 45} The Sixth Amendment to the United States Constitution guarantees a defendant the effective assistance of counsel at "'"critical stages of a criminal proceeding," including when he enters a guilty plea.'" *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, ¶ 14, quoting *Lee v. United States*, 582 U.S. 357, 137 S.Ct. 1958, 1964, 198 L.Ed.2d 476 (2017), quoting *Lafler v. Cooper*, 566 U.S. 156, 165, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

{¶ 46} In a petition for postconviction relief based on a claim of ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) that counsel's deficient performance prejudiced him, i.e., a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *State v. Moore*, 2d Dist. Clark No. 2014-CA-66, 2015-Ohio-550, ¶ 13, citing *State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983); *see also Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 47} After careful consideration, we find Kennedy's ineffective assistance of counsel claims are barred by the doctrine of res judicata. Preliminarily, we note that the ineffective assistance of counsel claims relating to counsel's dealings with Thomas and Pitts were previously raised, and rejected, in Kennedy's original

petition for postconviction relief in 2004. Kennedy is not entitled to a second opportunity to litigate his ineffective assistance of counsel claims in a successive petition merely because Kennedy failed to support his original petition with documentary evidence. The facts supporting these claims were known to Kennedy at the time his original petition was filed; he simply failed to supplement the petition to include the evidentiary materials supporting his claims. *State v. Brown*, 12th Dist. Preble No. CA2019-04-006, 2020-Ohio-971, ¶ 50 (Res judicata bars a petitioner from "re-packaging" evidence or issues that either were or could have been raised.). Furthermore, to the extent Kennedy challenges counsel's alleged failure to adequately cross-examine certain state witnesses regarding perceived inconsistencies in their testimony, such challenges rely on the trial record and could have been raised in Kennedy's direct appeal.

{¶ 48} Under the foregoing circumstances, we find the trial court did not err in finding that Kennedy's claims "regarding ineffective assistance of counsel and trial testimony" are barred by principles of res judicata.

### 3. Judicial Bias

{¶ 49} Finally, Kennedy's petition for postconviction relief alleged that the trial judge presiding over his criminal trial violated his constitutional rights to due process by failing "to uphold and promote the impartiality of the judiciary." Specifically, Kennedy maintained that "a new trial [was] necessary" because the trial judge did not disclose that she "had, at the time of trial, a close relationship with one of the witnesses who testified against him."

{¶ 50} "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34.

> [T]he term "biased or prejudiced," when used in reference to a judge before whom a cause is pending, implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.

*State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469, 132 N.E.2d 191 (1956).

{¶ 51} The Ohio Supreme Court has reiterated the importance of an unbiased judge, explaining:

> [I]t is imperative to remove any hint or question of an appearance of bias and to ensure to the parties and the public the unquestioned neutrality of an impartial judge. This court long ago noted that "'[n]ext in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge.'" *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 471, 132 N.E.2d 191 (1956), quoting *Haslam v. Morrison*, 113 Utah 14, 20, 190 P.2d 520 (1948).

*State v. Weaver (In re Cottrill)*, 171 Ohio St.3d 1201, 2022-Ohio-4800, 215 N.E.3d 569, ¶ 16.

{¶ 52} However, ""bias or prejudice on the part of a judge will not be presumed. In fact, the law presumes that a judge is unbiased and unprejudiced in the matters over which he presides, and bias or prejudice must be strong enough to overcome the presumption of his integrity."" *State v. Browning*, 8th Dist. Cuyahoga Nos. 111856, 111857, 111858, and 111859, 2023-Ohio-1887, ¶ 37, quoting *State v. Baker*, 25 Ohio Misc.2d 11, 12, 495 N.E.2d 976 (C.P.1984), quoting 48A

*Corpus Juris Secundum*, Judges, Section 108, at 731 (1981). The Ohio Supreme Court has held that the "appearance of bias or prejudice must be compelling to overcome" this presumption against bias. *In re Disqualification of Olivito*, 74 Ohio St.3d 1261, 1263, 657 N.E.2d 1361 (1994). Furthermore, "dissatisfaction or disagreement with a judge's rulings of law are legal issues subject to appeal. A judge's opinions of law, even if later found to be erroneous, are not by themselves evidence of bias or prejudice and thus are not grounds for disqualification." *In re Disqualification of Corts*, 47 Ohio St.3d 601, 602, 546 N.E.2d 928 (1988).

{¶ 53} In this case, Kennedy's judicial bias claim relies on a statement made by the trial judge during a subsequent and unrelated criminal proceeding held in 2016. During that proceeding, the trial judge spoke on behalf of the victim in that matter, and in the course of her statement, disclosed that she was the godmother of Rosalyn — a witness who testified on behalf of the state during Kennedy's trial in 2003. The trial judge has since clarified that her personal relationship with Rosalyn did not begin until after Kennedy's criminal trial was concluded. Thus, the trial judge "vehemently" disagreed with Kennedy's representations and maintained that she "had no relationship with any witness prior to or during Mr. Kennedy's trial, personal or otherwise."

{¶ 54} Based on the evidence incorporated into the state's brief in opposition to Kennedy's successive petition, there is no basis to conclude that the trial judge failed to disclose an existing relationship with a state witness at the time of Kennedy's trial in 2003. The trial judge's present relationship with Rosalyn does

not serve to retroactively support a claim of judicial bias. In the absence of evidence establishing an undisclosed relationship with a material witness in the proceeding, the judicial bias claim alleged in Kennedy's successive petition amounts to an attempt to litigate due-process claims that were raised, or could have been raised, previously. For instance, Kennedy argues on appeal that the trial court demonstrated her bias at trial by (1) permitting the state to introduce prior bad acts in violation of Evid.R. 404(B), (2) "failing to perform the appropriate analysis under Evid.R. 403," and (3) displaying "contempt towards petitioner's counsel during trial." Such claims rely on information contained in the trial court record and could have been raised in Kennedy's direct appeal. And in fact, this court overruled analogous claims in *Kennedy*, 8th Dist. Cuyahoga No. 83445, 2004-Ohio-6414. Accordingly, we find Kennedy's judicial bias claim is barred by res judicata.

{¶ 55} Moreover, even if this court were to accept Kennedy's suggestion that he has presented evidence dehors the record that "the trial court abandoned her role as a neutral jurist" by developing "feelings" for certain state witnesses over the course of his trial, we cannot conclude that the alleged constitutional error undermines confidence in the jury verdict. If such internal bias existed, Kennedy had not identified any external action by the court that would overcome the unambiguous identification testimony of several state witnesses. Similarly, we cannot find the court's alleged bias or prejudice influenced the judgment denying Kennedy's original petition for postconviction relief in 2004 where the undisputed facts establish that Kennedy failed to support his petition with documentary

evidence. Thus, even if the doctrine of res judicata did not apply, Kennedy failed to satisfy the requirement of R.C. 2953.23(A)(1)(b), and the trial court was without jurisdiction to consider the judicial bias arguments posed in this successive and untimely petition.

{¶ 56} The first, fourth, fifth, and sixth assignments of error are overruled.

## B. Misstatement of Law

{¶ 57} In the second assignment of error, Kennedy argues the trial court erred in applying an improper standard in assessing his postconviction petition. Specifically, Kennedy contends that the trial court's judgment was premised, at least in part, on the court's erroneous belief that Kennedy was required to request leave before filing the petition for postconviction relief. Kennedy also states that the court inappropriately concluded that there was "No Just Cause for Delay."

{¶ 58} Kennedy is correct that unlike the language set forth in Crim.R. 33, the statutory provision governing delayed petitions for postconviction relief does not require leave of court. Rather, as discussed, the requirements for filing an untimely or successive petition are governed by R.C. 2953.23. Nevertheless, regardless of the trial court's brief reference to Kennedy's failure to seek leave in this matter, we find no merit to Kennedy's position based on our resolution of the first, fourth, fifth, and sixth assignments of error. Finally, Kennedy has not directed this court to any case law to suggest the trial court's inclusion of the Civ.R. 54(B) language in its judgment entry was error.

{¶ 59} The second assignment of error is overruled.

## C. Fair and Impartial Trial Judge

{¶ 60} In the third assignment of error, Kennedy reiterates arguments previously addressed, claiming that the record demonstrates he was denied the constitutional right to a fair and impartial trial judge. Kennedy contends that the former trial judge's response to the affidavit of disqualification demonstrates that her personal feelings impaired her ability to remain impartial at the time of his trial. Kennedy further claims in the seventh assignment of error that the doctrine of res judicata should not apply where the prior rulings were made by a biased, nonneutral trial judge.

{¶ 61} Consistent with the foregoing discussion, we find no merit to Kennedy's arguments on appeal. As discussed, Kennedy's judicial bias claim is barred by res judicata or otherwise fails to satisfy the requirements of R.C. 2923.23(A)(1)(b).

{¶ 62} The third and seventh assignments of error are overruled.

{¶ 63} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR