[Cite as *State v. Jackson*, 2025-Ohio-2363.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellant, :

                                  No. 114324

v. :

JEREMIAH JACKSON, :

    Defendant-Appellee. :

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** July 3, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-09-532145-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Chauncey Keller, Assistant Prosecuting Attorneys, *for appellant*.

Jones Day and Brian K. Grube, *for appellee*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant the State of Ohio ("State") appeals from the trial court's judgment entry granting appellee Jeremiah Jackson's ("Jackson") petition for postconviction relief without an evidentiary hearing. In its sole assignment of error,

the State argues that the trial court erred by granting Jackson's untimely and successive postconviction petition.

{¶ 2} After a thorough review of the applicable law and facts, we reverse the judgment of the trial court, finding that the court lacked jurisdiction to consider Jackson's petition.

## I. Factual and Procedural History

{¶ 3} The criminal case underlying the instant appeal arose from the aggravated murder of Tracy Pickryl and the commission of other felony offenses during a 16-day crime spree in Cuyahoga, Erie, and Lorain counties in 2009. Jackson was named in a 42-count indictment, charging him with counts of aggravated murder and other offenses. The aggravated murder charges included death-penalty specifications.

{¶ 4} Jackson executed a jury waiver, and the case proceeded to a trial before a three-judge panel. The panel found Jackson guilty of the aggravated murder counts and accompanying death-penalty specifications, as well as various noncapital counts and the accompanying firearm specifications. Following a mitigation hearing, the panel sentenced Jackson to death.

{¶ 5} Jackson appealed his convictions and death sentence to the Supreme Court of Ohio, raising 14 propositions of law. The principal issues for review included the trial court's decision to conduct a limited hearing regarding an issue under *Atkins v. Virginia*, 536 U.S. 304 (2002), the validity of the jury waiver, the jurisdiction of the Cuyahoga County Grand Jury over offenses occurring in different

counties, the sufficiency of the indictment, prosecutorial misconduct during the penalty phase, various claims of ineffective assistance of counsel, and the constitutionality of Ohio's death penalty.

{¶ 6} The Court affirmed Jackson's convictions and sentence of death. *State v. Jackson*, 2014-Ohio-3707 ("*Jackson I*"). The United States Supreme Court denied certiorari. *Jackson v. Ohio*, 577 U.S. 959 (Nov. 2, 2015).

{¶ 7} While his appeal was pending before the Court, Jackson filed his first petition for postconviction relief, setting forth 14 grounds for relief. Jackson supported his petition with a report from a new expert, Dr. Jolie S. Brams. Dr. Brams's report concluded that Jackson exhibited symptoms of "mood disorder, depression, paranoia, limited intellectual abilities, [and] substance abuse." Jackson also supported his petition with affidavits from his trial counsel.

{¶ 8} The trial court dismissed Jackson's postconviction petition without a hearing, stating in pertinent part:

> After careful review of the [record] and consideration of each of defendant's 14 asserted grounds for relief, the court hereby dismisses the petition for postconviction relief without a hearing. No hearing is granted because the petition and its accompanying materials and the entire record of the proceedings show that defendant is not entitled to relief under any of the grounds set for relief. Defendant has failed to sustain his burden to provide the court with evidentiary documents containing sufficient operative facts to demonstrate his entitlement to relief under the petition.

{¶ 9} Jackson appealed the denial of his postconviction petition to this court, arguing numerous issues, two of which are relevant to the arguments presented in this appeal. First, he asserted that his trial counsel was ineffective in mitigation for

failing to obtain the appointment of a substance-abuse expert to provide an adequate psychological evaluation, and second, that Jackson did not knowingly, intelligently, and voluntarily waive his right to a jury trial because he was not advised of the relevant consequences and considerations.

{¶ 10} This court affirmed the trial court's decision to deny the petition without holding a hearing. *State v. Jackson*, 2017-Ohio-2651 (8th Dist.) ("*Jackson II*"). This court determined that Jackson had not presented sufficient evidence demonstrating that his trial counsel was ineffective and that his claims were barred by res judicata.

{¶ 11} Jackson then filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio. His petition asserted claims of ineffective assistance of counsel, along with the constitutionality of his jury waiver.

{¶ 12} While his habeas corpus petition was pending, Jackson had filed his second petition for postconviction relief, the subject of the instant appeal. His petition asserted three constitutional errors: (1) that his jury waiver was not knowing, intelligent, or voluntary; (2) that he received ineffective assistance of counsel related to his jury waiver; and (3) that he received ineffective assistance of counsel related to the penalty phase of his proceedings.

{¶ 13} Jackson sought a stay of his habeas corpus petition in order to pursue remedies in State court via his second petition for postconviction relief. The federal court found that two of his claims — the validity of the jury waiver and defense

counsel's mitigation efforts — were exhausted or procedurally defaulted because both claims had been presented in State court and adjudicated on the merits. *Jackson v. Shoop*, 2021 U.S. Dist. LEXIS 60405 (N.D. Ohio Mar. 30, 2021) ("*Jackson III*"). However, with regard to Jackson's third claim, which asserted ineffective assistance of counsel relating to the jury-trial waiver, the federal court determined that he had "made a sufficient showing that he *may* satisfy the requirements of [R.C. 2953.23]. . . ." (Emphasis added.) *Jackson III* at *20. The court concluded that Jackson had not yet exhausted this claim in State court and therefore stayed the case. *Id.*

{¶ 14} Jackson supported his second petition for postconviction relief with reports from two new experts, Dr. Bethany Brand and Dr. Jonathan Lipman, and affidavits from one of his trial attorneys, his brother, and one of Jackson's former teachers. Dr. Brand diagnosed Jackson with schizoaffective disorder; the symptoms of this disorder include auditory hallucinations, paranoid delusions, and tangential, disorganized thought processes. The record reflects that this was the first time Jackson received a specific diagnosis of a serious mental illness. Dr. Lipman's report agreed with Dr. Brand's diagnosis of schizoaffective disorder and further included analysis of the interaction between Jackson's psychiatric history and diagnosis with his intensive, long-running abuse of marijuana, PCP, and MDMA.

{¶ 15} The State opposed Jackson's second petition, arguing (1) the trial court lacked jurisdiction to consider the untimely and successive petition; (2) Jackson's claims were barred by res judicata; (3) Jackson's jury waiver was knowing,

intelligent, and voluntary; and (4) Jackson's trial counsel was not ineffective with regard to the jury waiver or the penalty phase of the trial.

{¶ 16} The court held a hearing to determine whether it had jurisdiction to consider Jackson's second petition. At the hearing, both sides presented arguments relating to the limited issue of jurisdiction; no evidence was taken.

{¶ 17} Following the hearing, the trial court issued an opinion and order finding that it had jurisdiction to entertain the petition and, furthermore, addressed the merits of the petition, despite not holding the evidentiary hearing required under R.C. 2953.21(F). The trial court found that (1) Jackson met the requirements of R.C. 2953.23(A)(1)(a) showing that he was "unavoidably prevented from discovery of the facts upon which [he] must rely to present [his] claim[s] for relief"; and (2) Jackson met the requirements of R.C. 2953.23(A)(1)(b) demonstrating that but for the constitutional errors that occurred when Jackson made an invalid jury waiver at trial, no reasonable factfinder could have convicted him.

{¶ 18} Specifically, the trial court found that Jackson was unavoidably prevented from discovering his now-diagnosed schizoaffective disorder and the effects of his polysubstance abuse on his neurophysiological condition because of his trial counsel's "failure to obtain psychiatric evaluations of his conditions" and failure to investigate the issue of Jackson's mental health despite knowing that he was mentally ill. The trial court appeared to also find that Jackson's first postconviction counsel were ineffective for failing to adequately investigate or present the extent of his conditions. The court noted that Jackson "depended on his counsel to ascertain

the sources of his abnormal neurophysiology by fulfilling their duty to conduct an adequate investigation."

{¶ 19} The court further held:

Mr. Jackson's schizoaffective disorder combined with the neurophysiological effects of his polysubstance abuse and borderline intellectual disability prevented him from knowingly, voluntarily, and intelligently waiving his right to jury trial. As a result, his jury trial waiver would be invalid and constitute a structural error in his trial that satisfies § 2953.23(A)(1)(b). *See Miller v. Dormire*, 310 F.3d 600 (8th Cir. 2002).

Mr. Jackson's ineffective assistance of counsel also constitutes a structural error. The United States Court of Appeals for the [Eighth] Circuit, relying on *Strickland v. Washington*, 466 U.S. 668 (1984), stated "when defendant's right to a jury trial is denied as a result of his attorney's deficient performance, [the court] has determined that on the basis of Supreme Court precedent, *Strickland* prejudice is presumed because such misconduct is tantamount to a structural error. *McGurk v. Stenberg*, 163 F.3d 470 (8th Cir. 1998). "'Structural errors' . . . call into question the very accuracy and reliability of the trial process and thus are not amenable to harmless error analysis, but require automatic reversal." *McGurk*, 163 F.3d at 474.

{¶ 20} The trial court further found that Jackson satisfied the requirement under R.C. 2953.23(A)(1)(b) establishing that, "but for the constitutional error[s] at [his] sentencing hearing, no reasonable factfinder would have found [him] eligible for the death sentence." The court determined:

The newly discovered evidence demonstrating Mr. Jackson's schizoaffective disorder and the neurophysiological effects of his polysubstance abuse provide mitigating evidence never presented to the trial court. In assessing prejudice in a claim based on failure to uncover and present mitigating evidence, a court must "reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510 (2003). It is a mitigating factor that "at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's

conduct to the requirements of the law." R.C. 2929.04(B)(3). In the instant matter, Mr. Jackson's inability to present evidence of his diminished capacity was prejudicial.

{¶ 21} Finally, the court found that Jackson's claims were not barred by res judicata, stating:

> The claims Mr. Jackson is asserting in his Second Petition were never raised on appeal or in his first post-conviction petition and could not have been litigated due to the ineffective assistance rendered by Mr. Jackson's trial counsel. Res judicata only "bars a convicted defendant who was represented by counsel from raising and litigating in a proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial . . . or on an appeal from that judgment." *Howard*, 2016-Ohio-504. As none of Mr. Jackson's previous claims were premised on the factual allegations of schizoaffective disorder, drug-induced neurological impairments, or the prospect that crime was driven by a drug-induced psychosis, the doctrine of res judicata does not apply to his Second Petition.

{¶ 22} Based on these findings, the trial court granted Jackson's second petition for postconviction relief. The State then filed a notice of appeal as a matter of right pursuant to R.C. 2945.67.

## II. Law and Analysis

{¶ 23} In its sole assignment of error, the State argues that the trial court improperly granted Jackson's untimely successive petition without holding an evidentiary hearing. The State argues that Jackson's new diagnosis, based upon indicia that had been present at the time of trial, is not new evidence for purposes of establishing grounds for postconviction relief. The State further argues that Jackson did not establish that, but for a constitutional error at trial or sentencing, he would not have been convicted or sentenced to death. Moreover, the State maintains that

the trial court cannot conclusively make these determinations without first holding an evidentiary hearing.

## A. Postconviction Relief

{¶ 24} R.C. 2953.21 through 2953.23 set forth how a convicted defendant may seek to have the trial court's judgment or sentence vacated or set aside pursuant to a petition for postconviction relief. "A defendant's petition for postconviction relief is a collateral civil attack on their criminal conviction." *State v. Kennedy*, 2024-Ohio-66, ¶ 23 (8th Dist.), citing *State v. Gondor*, 2006-Ohio-6679, ¶ 48. Further, "the 'right to file a postconviction petition is a statutory right, not a constitutional right.'" *State v. Apanovitch*, 2018-Ohio-4744, ¶ 35, quoting *State v. Broom*, 2016-Ohio-1028, ¶ 28. Therefore, a postconviction petitioner "'receives no more rights than those granted by the statute'" and any right to postconviction relief must arise from the statutory scheme enacted by the Ohio General Assembly. *Id.* quoting *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). This includes the right to have one's petition heard at all. *Id.* at ¶ 36.

{¶ 25} Pursuant to R.C. 2953.21(A)(1)(a)(i), any person who has been convicted of a criminal offense and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other

appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claims for relief. R.C. 2953.21(A)(1)(b).

{¶ 26} R.C. 2953.21(A)(2) provides that a petition for postconviction relief shall be filed within 365 days from the filing of the trial transcripts in the petitioner's direct appeal or, if a direct appeal was not pursued, 365 days after the expiration of time in which a direct appeal could have been filed.

{¶ 27} "A second or successive petition filed after the deadline bars postconviction relief with limited exceptions." *State v. Gordon*, 2025-Ohio-1237, ¶ 12, citing *State v. Johnson,* 2024-Ohio-134. There is no dispute that the petition at issue in this appeal is a successive, untimely petition for postconviction relief. R.C. 2953.21(A) precludes the trial court from entertaining an untimely or successive petition for postconviction relief unless the petition meets two conditions. First, the petitioner must show either that they were prevented from discovering the facts upon which the petition relies, or that the United States Supreme Court has recognized a new federal or state right that applies retroactively to the petitioner. R.C. 2953.23(A)(1)(a). Second, the petitioner must show by clear and convincing evidence that a reasonable factfinder would not have found him or her guilty but for the constitutional error at trial, or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence. R.C. 2953.23(A)(1)(b). "Because the timeliness requirement of R.C. 2953.23 is jurisdictional, a trial court does not have jurisdiction to entertain an

untimely filed petition for postconviction relief that does not meet the exceptions set forth above." *Kennedy*, 2024-Ohio-66, at ¶ 27 (8th Dist.), citing *State v. Barrow*, 2020-Ohio-3719, ¶ 7 (8th Dist.), citing *State v. Kleyman,* 2010-Ohio-3612, ¶ 35 (8th Dist.).

## B. Standard of Review

{¶ 28} Ordinarily, we review a trial court's decision granting or denying a petition for postconviction relief for an abuse of discretion. *Kennedy* at ¶ 30, citing *Gondor*, 2006-Ohio-6679, at ¶ 58. However, the issue of a trial court's subject-matter jurisdiction to entertain a petition for postconviction relief is a question of law subject to de novo review." *Id*., citing *Apanovitch*, 2018-Ohio-4744, at ¶ 24. "In a de novo review, we review the merits of the case independently, without any deference to the trial court." *Id*., citing *Sosic v. Hovancsek & Assocs., Inc.*, 2021-Ohio-2592, ¶ 21 (8th Dist.).

## C. R.C. 2953.23(A)(1)(a) – Unavoidably Prevented

{¶ 29} For the trial court to have had jurisdiction to entertain Jackson's second petition, Jackson first had to establish that he was "unavoidably prevented from discovery of the facts" upon which he relies. R.C. 2953.23(A)(1)(a). "'The phrase "unavoidably prevented" in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence.'" *State v. Waddy,* 2016-Ohio-4911, ¶ 28 (10th Dist.), quoting *State v. Howard*, 2016-Ohio-504, ¶ 21 (10th Dist.). "The 'facts' contemplated by R.C. 2953.23(A)(1)(a) are the historical facts of the case, which occurred up to and

including the time of conviction." *State v. Turner*, 2007-Ohio-1468, ¶ 11 (10th Dist.), citing *State v. Czaplicki*, 1998 Ohio App. LEXIS 2325 (2d Dist. May 29, 1998). "R.C. 2953.23[(A)(1)(a)] puts the onus on the petitioner to show that he was unavoidably prevented from discovering the facts on which his petition relies." *Johnson*, 2024-Ohio-134, at ¶ 13.

{¶ 30} Jackson contends that he was unavoidably prevented from discovering his now-diagnosed schizoaffective disorder and the effects of his drug abuse because of his attorneys' failures, both at trial and in his first postconviction proceeding, to investigate, obtain psychiatric evaluations of his conditions, and make appropriate use of them. The State does not dispute that the expert reports and Jackson's diagnosis are new; however, it argues that the basis of those reports are rooted in facts known since the trial proceedings.

{¶ 31} The Supreme Court of Ohio has explained "unavoidably prevented" as follows:

> R.C. 2953.23(A)(1)(a) requires a petitioner to show that he was "*unavoidably* prevented"—not merely "prevented"—from discovering the facts on which he would rely. (Emphasis added.) "Unavoidable" means "not avoidable" or "inevitable." *Merriam-Webster's Collegiate Dictionary* 1360 (11th Ed.2003). And something is "inevitable" if it is "incapable of being avoided or evaded." *Id*. at 638. Keeping in mind that R.C. 2953.23 means what it says, a petitioner filing an untimely postconviction petition must show that any delay in discovering the facts undergirding the petition was "incapable of being avoided or evaded[.]" *Merriam-Webster's Collegiate Dictionary* at 638.

*Johnson* at ¶ 24.

{¶ 32} The record is clear that Jackson suffered from psychological challenges and substance-abuse issues, which were noted throughout the trial and

postconviction proceedings. Trial counsel's performance was evaluated both by this court and the Supreme Court of Ohio and was not found to be ineffective. *See Jackson I* and *Jackson II*. Notwithstanding these determinations, Jackson has once again challenged his trial counsel's effectiveness for failing to adequately investigate and present evidence of his mental-health and substance-abuse issues, along with asserting that his first postconviction counsel also failed to properly examine his mental health.

{¶ 33} Jackson's petition is premised on the fact that the diagnosis of schizoaffective disorder and the effects of his polysubstance abuse on his neurophysiological condition constitute newly discovered facts/evidence, but his psychological challenges and substance-abuse issues are not new evidence or facts recently discovered. Jackson does not claim that his two most recent experts were presented with any *new or additional facts* about his history or mental health that have been uncovered since his trial. The diagnosis and effects of substance abuse on his condition are therefore not newly discovered *facts* — they are simply additional information about facts that already existed throughout his case and have been thoroughly vetted.

{¶ 34} Indeed, Jackson's substance abuse and psychological issues have been prevalent throughout the trial-court and appellate proceedings. As it relates to Jackson's mental health, Dr. Brand noted in her report that "Jackson has struggled with serious psychiatric symptoms for years." (Brand report p. 23, Exhibit A to Pet.

for Postconviction Relief.)  She listed the following symptoms in support of her

diagnosis of schizoaffective disorder:

> a) auditory hallucinations ("voices", e.g., reported to me, Dr. Fabian, Dr. Aronoff; reported on the PAI ["Personality Assessment Inventory"])[1]

> b) paranoid delusions (e.g., with me; with ambulance staff and emergency department physician at St. Vincent Charity Hospital; on the PAI I administered by me as well as the one administered by Dr. Fabian; with Dr. Brams)[2]

> [c)] [sic]

> d) tangential, disorganized thought processes which have been described as "loose associations" and "rambling" speech (e.g., with me; Dr. Brams (p. 8), reported by his father and sister at the St. Vincent Charity Hospital evaluation; endorsed on the PAI)

> e) pressured speech (e.g., with me; with Dr. Brams; people in his Bible study group have told him to slow down and that he was "losing" other group members due to fast speech)

> f) periods of severe insomnia (e.g., he gets so excited by his religious and philosophical thoughts that he cannot sleep for hours at night, yet despite this, he feels energetic; he has sometimes felt so unable to sleep that he reportedly took medication from another inmate to force himself to sleep; he stated, "I stay up until 2 AM and get up at 4 AM")

> g) mood variability including:

> 1) depression — He told me he felt depressed as an adolescent; he reported symptoms of depression to Dr. Brams; St. Vincent record indicates his mood was sad; he reported that he sometimes feels sluggish and drained, cannot get himself to go the prison's gym, and he feels "low")

---

[1] Dr. John Matthew Fabian, a clinical psychologist, and Dr. Michael Aronoff, chief of psychology at the Cuyahoga County Common Pleas Court Psychiatric Clinic, each examined Jackson during the trial-court proceedings.  Dr. Fabian testified on Jackson's behalf at the mitigation hearing.

[2] According to Dr. Brand's report, Jackson underwent an "emergency psychiatric evaluation" in 2000 at St. Vincent Charity Hospital.  *Id.*

2) irritability, anger shifting to sad — St. Vincent records indicate that during a psychiatric crisis, he [sic] mood shifted from being angry and anxious to the point that an ambulance was called, to sad when he was observed in the emergency department; he reported to me that after periods of not being able to sleep due to having enthralling, creative ideas, he reportedly sleeps for two days due to taking medication [reportedly he had obtained Elavil from another inmate]. Anti-depressants do not typically cause people to sleep for two days, so it seems possible that this reported excessive sleepiness, if accurately reported, may indicate that his elevated mood shifts to a fatigued, depressed state)

3) hypomania or mania (his mood quickly elevated and his speech accelerated when he engaged in religious talk with me and with Dr. Brams; he reported "my thoughts come so fast I can't read, can't sleep; "I learn more from my thoughts than anything else")

h) excessive energy (Dr. Brams and I observed him become much more energetic with accelerated speech when he talked about religious topics; he told me that he gets so excited about his abstract ideas that he cannot sleep for many hours; at times when he has an increase in energy, he also experiences an increase in libido)

i) possible visual hallucinations (he told Dr. Aronoff that "I see saliva in my food." They (jail staff) are spitting in my food p. 18)

j) preoccupation with themes that are typical among individuals with mood disorders (I observed him repeatedly shift from the topic at hand to religious topics dozens of times during each day of assessment; it took considerable effort on my part to steer him repeatedly back to the topic; furthermore, he made frequent allusions to sexual themes with me, such as remarking that I was asking such personal questions it was like "having sex with the lights on," his belief in polygamy, asking me about my relationship status, and missing sexual relationships with women)

(*Id.* at p. 26-27.)

{¶ 35} It is clear that the majority of symptoms noted by Dr. Brand were present in Jackson's records and/or had been conveyed to previous experts in the case. We agree with the State that this case is comparable to *State v. Lindsey*, 2024-

Ohio-5244 (12th Dist.). In *Lindsey,* the defendant filed a second petition for postconviction relief, arguing that he was unavoidably prevented from discovering his diagnosis of Fetal Alcohol Syndrome Disorder ("FASD"). The court was not persuaded by this argument, noting:

> [T]he evidence used to establish Lindsey's FASD diagnosis was based primarily on the affidavits Lindsey used to support his original petition for PCR that was filed with the trial court over 25 years ago on September 21, 1998. The record is, in fact, chock full of references to the troubles that Lindsey's family had with alcohol and the effect that alcohol abuse had on Lindsey as a child. This included reports that Lindsey's mother drank heavily while she was pregnant with Lindsey and his siblings.

*Id.* at ¶ 20.

{¶ 36} This case is also similar to *State v. McFarland*, 2022-Ohio-4638 (8th Dist.). In *McFarland,* the defendant filed a motion for new trial, arguing that after she was sent to prison, she received psychiatric treatment and discovered that her mental illness had been misdiagnosed and that she had been incompetent to stand trial.[3] *Id.* at ¶ 11. The *McFarland* panel affirmed the trial court's denial of the motion for leave to file her motion for new trial, noting that her "new diagnosis [did] not necessarily mean she was previously misdiagnosed[,]" nor did McFarland present any evidence supporting the same. *Id.* at ¶ 26. The court further held:

> McFarland failed to present evidence that, on its face, would support her claim that she was unavoidably prevented from discovering that

---

[3] Crim.R. 33(B), which governs untimely motions for a new trial, requires the defendant to prove that he or she was "unavoidably prevented" from discovering the evidence on which he or she relies. The Supreme Court of Ohio has noted that "'[t]he "unavoidably prevented" requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1).'" *Johnson* at ¶ 16, fn. 1, quoting *State v. Bethel*, 2022-Ohio-783, ¶ 59, quoting *State v. Barnes*, 2018-Ohio-1585, ¶ 28 (5th Dist.).

she was misdiagnosed prior to trial and that improper treatment based on the misdiagnosis impaired her ability to engage in her own defense. The fact that she had a mental illness and cognitive deficits was known prior to trial. She, therefore, cannot meet her burden of establishing, by clear and convincing evidence, that she was unavoidably prevented from obtaining information regarding her mental-health condition prior [to] trial had she and her trial counsel exercised reasonable diligence.

*Id.* at ¶ 29.

{¶ 37} Jackson acknowledges in his brief that "a more-specific [sic] diagnosis or more-favorable [sic] expert report is not sufficient to show ineffective assistance of counsel . . . ." However, he states that counsel is required to "do more" when there is "some obvious indication" that the existing expert offering is inadequate. He contends that the experts hired by both his trial and first postconviction counsel were "inadequate" and that counsel "should have done something about that." He maintains that counsel has a duty to act where there are "red flags" about the expert.

{¶ 38} The "red flags" cited by Jackson in his brief relate solely to his trial counsel and the experts utilized therein. However, any "red flags" about the experts used in his trial were already addressed and rejected by this court in *Jackson II*. In *Jackson II*, the panel noted:

> [W]e find nothing in the record or the evidence attached to Jackson's petition to suggest Dr. Fabian's evaluation was incomplete or that defense counsel failed to fully investigate available mitigation evidence. As referenced in *Jackson [I]*, defense counsel and Dr. Fabian "interviewed Jackson on numerous occasions," reviewed all relevant records, interviewed members of Jackson's family, and meticulously considered the nexus between the relevant mitigating factors and the offenses committed. *Jackson* [I] at ¶ 216. Although Dr. Brams believes a better job could have been done investigating and presenting Jackson's psychological background, she "has the benefit of perfect hindsight, the distorting effect of which must be avoided." *State v.*

> *Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987), *cert. denied*, 484
> U.S. 1079, 98 L.Ed.2d 1023, 108 S.Ct. 1061 (1988). "[D]efendants are
> not entitled to perfect mitigation hearings." *State v. Landrum*, 4th
> Dist. Ross No. 98 CA 2401, 1999 Ohio App. LEXIS 71, *41 (Jan.11,
> 1999). "When, as here, counsel has presented a meaningful concept of
> mitigation, the existence of alternate or additional mitigation theories
> does not establish ineffective assistance." [*State v.*] *Combs*, 100 Ohio
> App.3d [90,] 105, 652 N.E.2d 205 (1st Dist.1994).

*Jackson II* at ¶ 50.

{¶ 39} With regard to his first postconviction petition, Jackson asserts that Dr. Brams did not go far enough by not diagnosing him with a serious psychosis-spectrum mental disorder. Dr. Brams "conducted a five-hour clinical/forensic evaluation of Jackson and reviewed a large number of Jackson's 'historical, education, and psychological record.'" *Jackson II* at ¶ 35. Dr. Brams concluded Jackson's "mood disorder, depression, paranoia, limited intellectual abilities, substance abuse, and his previous sexual conviction negatively impacted [his] 'functioning' at the time the offenses were committed." *Id.* Jackson appeared to have no issues with Dr. Brams's assessment at the time of his first petition, and he makes no explanation now as to why additional experts were still necessary.

{¶ 40} Jackson points to the affidavit from his trial counsel presented with the second petition, wherein counsel stated that he "had no question that [Jackson] was mentally ill." Jackson contrasts this with counsel's affidavit submitted with the first postconviction petition where he characterized Jackson as a "difficult client" who did not "grasp the severity of the situation he was in." He therefore contends that first postconviction counsel were unaware that Dr. Brams's diagnosis "fell short" of trial counsel's "contemporaneous evaluation" of Jackson. Counsel did not

provide any explanation in his second affidavit for the difference in his description of Jackson between the two affidavits.

{¶ 41} Pursuant to R.C. 2953.21(J)(2), Jackson is precluded from presenting any arguments regarding the effectiveness of his first postconviction counsel. The statute expressly prohibits a defendant from collaterally challenging his or her counsel's effectiveness in pursuit of postconviction relief, stating, "The ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a direct appeal." R.C. 2953.21(J)(2). Accordingly, we may only examine Jackson's arguments as they relate to his trial counsel.

{¶ 42} The trial court likened this case to *State v. Howard*, 2016-Ohio-504 (10th Dist.), where the defendant had told his attorney about certain records that would support his defense and the attorney never sought the records. Howard argued that he was therefore unavoidably prevented from obtaining the records, and the court agreed. The court stated that it declined to penalize Howard for his counsel's failure to conduct an investigation based upon information that Howard had provided. *Id.* at ¶ 34. Jackson argues that the same situation exists here, because he, as someone with a "severe psychosis-spectrum mental illness," could not be expected to investigate his own mental illness and was forced to rely on his counsel.

{¶ 43} *Howard* is distinguishable from the instant matter because it is not apparent what additional steps Jackson's trial counsel should have taken. Jackson argued in his first postconviction petition that his trial counsel had "failed to obtain a complete and sufficient mental health assessment from a competent psychologist." *Jackson II* at ¶ 33. He seemingly believed that the assessment by Dr. Brams, submitted with the first petition, was sufficient at the time and does not explain why that is no longer the case.

{¶ 44} The only explanation Jackson offers as to why Dr. Brand was able to make the diagnosis that the prior experts had not was that he had been more open with Dr. Brand and told her things that he had not told the other experts. If the diagnosis turned solely on Jackson's willingness to be open with the expert examining him, it is unclear how trial counsel's performance could have had any effect. Counsel could not have been aware of what Jackson should have shared with the prior experts in order for the diagnosis of schizoaffective disorder to be obtained earlier.

{¶ 45} As noted above, Jackson points to the affidavit of one of his trial counsel, where he maintained that he "had no question that [Jackson] was mentally ill." Jackson argues that despite all of his counsel's misgivings, he "took no steps to investigate further when the opinions of the experts were inconsistent with his own assessment . . . ." (Appellee brief, p. 18.). Jackson appears to be advocating for an impossible standard for trial counsel. The experts certainly found that Jackson had psychological issues, but we cannot find that because they did not specifically

diagnose Jackson with schizoaffective disorder, his counsel should have investigated further.

{¶ 46} In *Pruitt v. Neal,* 788 F.3d 248 (7th Cir. 2015), Pruitt's counsel was found to be ineffective for failing to investigate and present mitigating evidence of Pruitt's mental illness. But in *Pruitt,* his counsel knew that the defendant had been previously diagnosed with schizophrenia and was also aware that Pruitt had previously been prescribed an antipsychotic medication. Further:

> Counsel also knew from Dr. Hudson's testimony at the pretrial hearing that Dr. Hudson noted some of Pruitt's responses to his questioning were not "clearly lucid." And counsel was aware that Dr. Schmedlen had seen symptomology consistent with schizophrenia during his evaluations of Pruitt. If this were not enough to prompt a competent lawyer to further investigate Pruitt's mental health, the defense's own expert Dr. Olvera had recommended that counsel contact an expert "in dealing with psychosis, such as schizophrenia." But trial counsel did not contact such an expert to have Pruitt evaluated, and counsel offered no reason for failing to do so.

*Id.* at 272.

{¶ 47} There was no similar evidence presented here. Dr. Brand stated in her report that Jackson told her that "he had not told anyone on his defense team or any of the prior experts about the details of his life" that he had conveyed to her. (Brand report p. 11, exhibit A to Pet. for Postconviction Relief.) But Jackson does not argue that competent counsel would have ensured that he would have told these additional details to the prior experts.

{¶ 48} Nevertheless, even if we were to find some fault in counsel's failure to seek additional psychological evaluations, a claim of ineffective assistance of counsel does not equate to being unavoidably prevented from discovering the facts

underlying Jackson's new diagnosis and the effects of his substance abuse. In order to establish ineffective assistance of counsel, Jackson must demonstrate that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 687-688 (1984). Jackson's argument that he was unavoidably prevented from discovering certain facts implies that the facts existed and that competent counsel would have uncovered them. As explained by the Eleventh District:

> [F]or [appellant's] trial counsel to have been ineffective, then effective trial counsel would have been able to discover evidence of [appellant's] intellectual disability with reasonable inquiry. However, if the evidence was reasonably discoverable, then, by definition, the "unavoidably prevented" standard is not met. "The defendant cannot claim evidence was undiscoverable simply because no one made efforts to obtain the evidence sooner." *State v. Bethel*, 2020-Ohio-1343, ¶ 20 (10th Dist.).
>
> Conversely, if evidence of [appellant's] intellectual disability was not reasonably discoverable, then even effective trial counsel could not have discovered it. In that case, [appellant's] trial counsel could not have been ineffective for failing to investigate, develop, or present such evidence. *See State v. Waddy*, 2016-Ohio-4911, ¶ 37, 68 N.E.3d 381, fn. 5 (10th Dist.) (recognizing this "'Catch-22 situation' in the analogous context of a motion for new trial under Crim.R. 33(B)").

*State v. Martin,* 2025-Ohio-144, ¶ 50-51 (11th Dist.). S*ee also State v. Jackson* 2020-Ohio-4015, ¶ 28 (3d Dist.) ("Moreover, '[t]he fact that appellant raises claims of ineffective assistance of counsel suggests that the bases for his claims could have been uncovered if "reasonable diligence" had been exercised.'"), citing *State v. Cunningham*, 2016-Ohio-3106, ¶ 22 (3d Dist.), quoting *State v. Creech*, 2013-Ohio-3791, ¶ 18 (4th Dist.).

{¶ 49} The same circumstances are present in the instant matter. Jackson cannot both argue that he was unavoidably prevented from discovering his new diagnosis and effects of his substance abuse *and* that his counsel was ineffective for not discovering it. Either the facts existed or they did not, and Jackson has made no claim that the facts underlying his present diagnosis did not exist at the time of his trial.

{¶ 50} It is difficult to see this case as anything other than an attempt at a second bite at the postconviction apple. Jackson was evaluated by experts for his trial, later evaluated by different experts for his first postconviction petition, yet offers no explanation as to why any of these experts failed to diagnose him earlier. The only explanation that can be gleaned from the record is that Jackson simply opened up more to Dr. Brand.

{¶ 51} Jackson blames his trial counsel for not investigating his psychological issues further, but Jackson's mental state was evaluated throughout these proceedings. It is clear from Dr. Brand's report that the majority of symptoms noted by her had also been evident in Jackson's records or his interactions with prior experts. Mental-health and substance-abuse issues had been at the heart of this case throughout the proceedings, and Jackson's counsel cannot have been expected to realize that Jackson had not received the correct diagnosis. Regardless, by simply arguing that competent counsel with reasonable diligence could have discovered and presented evidence of his diagnosis, Jackson has admitted that he was not

unavoidably prevented from discovering his psychological challenges and substance-abuse issues.

{¶ 52} We find that Jackson failed to demonstrate that he was unavoidably prevented from discovering the facts to support his petition. As such, the trial court lacked jurisdiction to consider his petition and was required to dismiss it. Accordingly, the judgment of the trial court is reversed.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
WILLIAM A. KLATT, J.,* CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)

WILLIAM A. KLATT, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 53} I concur with the majority opinion in reversing the judgment of the trial court with respect to the first two claims in Jackson's petition. However, I would reverse on different grounds as explained below. Further, I respectfully

dissent from the majority's opinion reversing the judgment of the trial court with respect to Jackson's third claim in his petition and would affirm the trial court's determination that it had jurisdiction to consider that claim. However, I would reverse the trial court's judgment granting the petition and would remand for the trial court to hold an evidentiary hearing on the merits of the third claim in Jackson's petition.

{¶ 54} I respectfully dissent from the majority's conclusion that Jackson was not unavoidably prevented from discovering the facts on which his second petition is based. While I agree with the majority that Jackson's substance-abuse and psychological issues were prevalent throughout the trial court and appellate proceedings, I disagree that this forecloses his use of a new diagnosis of schizoaffective disorder to support his second petition.

{¶ 55} According to Jackson, he was unavoidably prevented from discovering his schizoaffective disorder due to his attorneys' failure at trial and in his first postconviction proceeding to obtain appropriate psychiatric evaluations and an accurate diagnosis of his mental disorder. This is not a case in which a defendant was aware of certain facts and failed to disclose them to counsel or was unaware of certain facts but could have discovered them with reasonable diligence. Rather, Jackson alleges that he was suffering from an undiagnosed schizoaffective disorder at the time of the offense, at the time he was going through the underlying capital proceedings, and at the time of his first postconviction petition. Ohio courts have expressed "concerns" with "placing the onus of responsibility to thoroughly

investigate a case on the defendant when the defendant is represented by and relying on counsel." *State v. Howard*, 2016-Ohio-504, ¶ 34 (10th Dist.). I share those concerns. Moreover, it is unreasonable to expect that Jackson could have brought his alleged misdiagnosed/undiagnosed condition to his attorneys' attention on his own.

{¶ 56} I likewise disagree with the majority's statement that Jackson's diagnosis is not a fact but is merely additional information about facts that already existed throughout the case. It is certainly true that Dr. Brand's and Dr. Lipman's psychiatric diagnosis is based at least in part on facts that existed throughout the case.[4] But their diagnosis is that Jackson suffered from schizoaffective disorder at the time of his offense, during his trial, and thereafter. If this diagnosis would be accepted, the existence of Jackson's schizoaffective disorder is most certainly a new fact. Otherwise, a court would never have jurisdiction to even consider a claim based on an alleged corrected misdiagnosis because this could never constitute a newly discovered fact for purposes of determining jurisdiction under the postconviction statute.

{¶ 57} Furthermore, just because Jackson is alleging that he was previously misdiagnosed, and new evidence indicates he suffered from a more significant psychiatric disorder, that does not mean the trial court is required to accept these allegations. That question goes to the merits of Jackson's petition, not to whether

---

[4] In addition to reviewing the prior reports and relevant records, both experts interviewed Jackson themselves, and Dr. Brand conducted a forensic psychological assessment of Jackson over approximately 11 and one half hours.

the trial court has jurisdiction to address the merits of the petition. The majority opinion improperly conflates the jurisdictional analysis with the merits of Jackson's petition. As long as Jackson's petition "alleged sufficient operative facts that, *if true*, established that a constitutional violation at trial caused his convictions [or impacted his sentence], he is entitled to a hearing on the petition." (Emphasis added.) *State v. Johnson*, 2024-Ohio-134, ¶ 48, citing *State v. Bunch*, 2022-Ohio-4723, ¶ 45-50. The validity of the new diagnosis alleged in Jackson's petition and/or the effectiveness of Jackson's trial attorneys goes to the merits of Jackson's petition and not to the jurisdictional requirements under the postconviction statute.

{¶ 58} Having concluded that Jackson was unavoidably prevented from discovering his alleged schizoaffective disorder, I would find that he has satisfied the first jurisdictional threshold under R.C. 2953.23(A)(1)(b). I would then address the second jurisdictional threshold — whether Jackson presented clear and convincing evidence that a reasonable factfinder would not have found him guilty, or would not have found him eligible for the death sentence, because of this diagnosis.

{¶ 59} Jackson's first claim in his successive petition is that his jury waiver was invalid because it was not knowing, intelligent, or voluntary. His second claim is that his trial counsel was ineffective for encouraging him to waive his right to a jury trial. Specifically, Jackson argues that the jury waiver was invalid because, given his newly diagnosed schizoaffective disorder, he could not have made the waiver knowingly, intelligently, or voluntarily. Moreover, Jackson argues that his

trial counsel was ineffective for encouraging the invalid jury waiver instead of further investigating his mental health.

{¶ 60} For the trial court to have jurisdiction over both of Jackson's first two claims in his petition, Jackson must show by clear and convincing evidence that no reasonable factfinder would have found him guilty. Jackson has failed to satisfy this jurisdictional requirement for these claims.

{¶ 61} Jackson argues that because his first two claims point to a structural error that occurred prior to trial, he satisfies the jurisdictional requirements of R.C. 2953.23. Jackson supports this assertion by providing an extensive discussion of structural error, generally, and the right to a trial by jury, specifically.

{¶ 62} Although an invalid jury waiver might constitute a structural error, this alone is insufficient to satisfy the requirements of R.C. 2953.23(A)(1)(b). Jackson does not cite to any case standing for the proposition that structural error automatically overcomes the jurisdictional requirements of R.C. 2953.23. On the contrary, the limited number of cases addressing claimed structural errors in the specific context of petitions for postconviction relief explicitly hold that structural error does not excuse the petitioner from satisfying the statutory requirements. *State v. Taylor*, 2019-Ohio-842, ¶ 15 (11th Dist.) ("A claim of structural error does not affect the disposition of the present appeal. Such claim does not excuse Taylor from satisfying the jurisdictional requirement of filing a timely postconviction petition."); *State v. Cunningham*, 2016-Ohio-3106, ¶ 24 (3d Dist.) ("Cunningham

cannot offer a constitutional structural-error argument as a way of alleviating himself of compliance with the [postconviction] statute.").

{¶ 63} Furthermore, the trial court did not cite any relevant case law supporting its conclusion that structural error satisfies the jurisdictional requirements set forth in R.C. 2953.23(A)(1)(b). The trial court cited an Eighth Circuit case in which the petitioner sought federal habeas relief under 28 U.S.C. 2254 and the Eighth Circuit affirmed the federal district court's granting habeas relief based on an invalid jury waiver. *Miller v. Dormire*, 310 F.3d 600 (8th Cir. 2002). *Miller* sheds no light on whether an alleged structural error grants a trial court jurisdiction to consider the merits of an untimely and successive postconviction petition under Ohio law. *Miller*, therefore, is not controlling authority and provides limited, if any, guidance here.

{¶ 64} The question that must be answered in determining whether the trial court had jurisdiction over the first two claims in Jackson's petition is this: has Jackson shown, by clear and convincing evidence, that but for his alleged invalid jury waiver, he would not have been found guilty? Although Jackson has alleged an invalid jury waiver, he has not provided any evidence — let alone clear and convincing evidence — that a jury would not have found him guilty.

{¶ 65} Because Jackson has not satisfied the jurisdictional requirement in R.C. 2953.23(A)(1)(b) with respect to his first two claims, I would conclude that the trial court erred in holding that it had jurisdiction over those claims. I therefore

concur in reversing the trial court's judgment with respect to the first two claims in Jackson's petition.

{¶ 66} Jackson's third claim in his untimely successive petition for postconviction relief is that he received ineffective assistance of counsel during the mitigation phase of his trial. Specifically, Jackson argues that if his lawyers had presented evidence of his schizoaffective disorder during the mitigation phase of his trial, he would not have received the death penalty. For the trial court to have jurisdiction over Jackson's third claim, Jackson must show by clear and convincing evidence that, but for his counsel's ineffective presentation during mitigation, no reasonable factfinder would have found him eligible for the death penalty.

{¶ 67} The United States Supreme Court has held that counsel's failure to discover and present significant mitigating evidence is "'below the range expected of reasonable, professional competent assistance of counsel.'" *Williams v. Taylor*, 529 U.S. 362, 371 (2000). While *Williams* was reviewing an ineffective-assistance-of-counsel claim in the context of federal habeas proceedings, the prejudice analysis in that case is analogous to the R.C. 2953.23(A)(1)(b) analysis that applies here. *Williams* found that the prejudice prong of the test for ineffective assistance of counsel was satisfied because the petitioner established a reasonable probability

that the result of the sentencing phase in his case would have been different if competent counsel had presented sufficient evidence in mitigation.[5] *Id.* at 399.

{¶ 68} Jackson argues that had his trial counsel obtained appropriate psychiatric evaluations and an accurate diagnosis of his mental disorder, and presented that mitigating evidence, Jackson would not have been eligible for the death penalty. R.C. 2929.04(B) lists statutorily enumerated mitigating factors that a factfinder is permitted to consider during the penalty phase of a capital case. Relevant to this case, R.C. 2929.04(B)(3) states:

> Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law.

Jackson asserts, and I agree, that had the factfinder had the benefit of expert reports from Dr. Brand and Dr. Lipman that discussed Jackson's diagnosis for schizoaffective disorder and its relation to his commission of the underlying offenses, and the factfinder believed this new evidence, no reasonable factfinder would have found him eligible for the death penalty.

{¶ 69} For these reasons, I respectfully dissent from the majority and would find that Jackson has satisfied the second jurisdictional requirement with respect to the third claim in his postconviction petition. Therefore, I would find the trial court correctly determined that it had jurisdiction to consider this claim. However, I

---

[5] Pursuant to *Strickland v. Washington*, a defendant seeking to establish ineffective assistance of counsel must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668.

express no opinion concerning the merits of Jackson's petition.  That is for the trial court to determine.

{¶ 70} Further, having found that the trial court correctly determined that it had jurisdiction to entertain the third claim in Jackson's petition, I would go on to address the trial court's decision to grant Jackson's petition without first holding an evidentiary hearing.

{¶ 71} R.C. 2953.21 governs a petition for postconviction relief and provides, in relevant part:

> (D) *Before granting a hearing* on a petition, the court shall determine whether there are substantive grounds for relief.  In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. . . .
>
> (E) Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion.  Division (A)(6) of this section applies with respect to the prosecuting attorney's response.  Within twenty days from the date the issues are raised, *either party may move for summary judgment*.  The right to summary judgment shall appear on the face of the record.
>
> (F) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, *the court shall proceed to a prompt hearing* on the issues even if a direct appeal of the case is pending.  If the court notifies the parties that it has found grounds for granting relief, either party may request an appellate court in which a direct appeal of the judgment is pending to remand the pending case to the court.

(Emphasis added.)

{¶ 72} Based on the statutory language above, the trial court has several options. The court can dismiss the petitioner's petition without a hearing if it finds that "the petition, the supporting affidavits, the documentary evidence, the files, and the records did not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 1999-Ohio-102, paragraph two of the syllabus. The trial court can schedule a hearing if it finds substantive grounds for relief. R.C. 2953.21(D). Finally, the trial court can act on either party's motion for summary judgment and grant summary judgment if the right to summary judgment "appear[s] on the face of the record." R.C. 2953.21(E).

{¶ 73} "[T]he post-conviction relief statutes do not expressly mandate a hearing for every post-conviction relief petition and, therefore, a hearing is not automatically required.'" *State v. Tenney*, 2021-Ohio-3676, ¶ 17 (8th Dist.), quoting *State v. Moore*, 2015-Ohio-550, ¶ 20. Specifically, when a trial court denies a petition, it is well settled that the court is not required to hold an evidentiary hearing because implicit in the trial court's denial is that it did not find that the petitioner alleged sufficient operative facts showing substantive grounds for relief. *Tenney* at ¶ 33 (Sheehan, J., concurring in judgment only), citing *State ex rel. Jackson v. McMonagle*, 1993-Ohio-143; *State v. Jackson*, 64 Ohio St.2d 107 (1980). Further, a hearing is not required when it resolves the petition by granting a party's motion for summary judgment.

{¶ 74} Neither situation applies here; the trial court did not deny Jackson's petition, and neither party had a pending motion for summary judgment. Instead,

the trial court granted Jackson's petition without first holding an evidentiary hearing.

{¶ 75} This court has held that where the trial court granted a postconviction petition without first conducting an evidentiary hearing, the trial court abused its discretion. *Tenney* at ¶ 23. The postconviction "statute does not authorize any court to summarily grant post-conviction relief without that evidentiary hearing." *Id.* at ¶ 18, quoting *State v. Bajaj*, 2005-Ohio-6778, ¶ 15 (7th Dist.). While the statute likewise does not expressly forbid the granting of a postconviction petition, I would find that the use of "shall" in the statute indicates that a trial court is required to hold an evidentiary hearing before granting a petition for postconviction relief.

{¶ 76} Therefore, I would find that because the trial court did not hold an evidentiary hearing before granting Jackson's petition, it abused its discretion. I would therefore sustain the State's assignment of error in part, affirm the trial court's jurisdictional determination with respect to Jackson's third claim, concur with the majority's reversal of the trial court's jurisdictional determination with respect to Jackson's first two claims, and remand the case for the trial court to hold an evidentiary hearing on the third claim in Jackson's petition.

{¶ 77} I respectfully concur in part and dissent in part.